# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | ) | |
| | ) | |
| v. | ) | Case No. 1:13-CR-081 (EGS) |
| | ) | |
| **JOHN LEE** | ) | Sentencing Date: July 23, 2015 |
| | ) | |
| **Defendant.** | ) | |

## DEFENDANT'S MEMORANDUM IN AID OF SENTENCING

The defendant, John Lee, by and through counsel, respectfully submits this Memorandum in Aid of Sentencing.

The defense respectfully submits that there are a number of factors in this case that militate strongly for a sentence below the 30 months the government has requested for Mr. Lee. They include: (1) Mr. Lee's history and characteristics, including both his post-offense rehabilitation and his child-care obligations for four children (including his 2-year-old daughter, Ahjin), as well as his elderly parents; (2) Mr. Lee's role in the bribery scheme, a scheme that was not of his making, that he was a late arrival to, and that was driven overwhelmingly by a single corrupt government official, In Seon Lim; (3) the November 2015 amendments to the fraud and bribery guidelines, which place Mr. Lee at a lower offense level than the current Guidelines; (4) comparable sentences in this case and in bribery cases nationwide, and (5) the other goals of sentencing under 18 U.S.C. § 3553(a), including general deterrence. Based on the foregoing, and as discussed below, Mr. Lee respectfully requests a sentence below the government's recommended sentence of 30 months, and specifically a sentence of 18 months. Such a sentence is a better fit with Mr. Lee's family circumstances, his role in the offense relative to others, the new fraud and bribery guidelines, and the § 3553(a) factors generally.

**LEGAL STANDARD**

Before sentencing Mr. Lee, this Court is to carefully weigh each of the statutory sentencing factors set forth in 18 U.S.C. § 3553(a) and exercise its independent discretion to craft the shortest sentence that is "*sufficient, but not greater than necessary*," to accomplish the purposes of sentencing, as set forth in § 3553(a)(2).  18 U.S.C. § 3553(a) (emphasis added).

The Supreme Court has emphasized that a "Guidelines" range based on the United States Sentencing Commission Guidelines Manual *cannot* be substituted for a sentencing court's independent sentencing determination:  "The Guidelines are not only *not mandatory* on sentencing courts; they are also not to be *presumed* reasonable."  *Nelson v. United States*, 555 U.S. 350, 352 (2009) (emphasis in original); *see also Kimbrough v. United States*, 552 U.S. 85 (2007) (confirming that the Guidelines "are advisory only").

After careful consideration of the seven co-equal factors set forth in § 3553(a), the Court is free to conclude that a case falls outside the heartland contemplated by the Guidelines, or that "the guidelines sentence itself fails properly to reflect the § 3553(a) considerations," or that "the case warrants a different sentence regardless."  *Rita v. United States*, 551 U.S. 338, 351 (2007).  While the sentencing court begins its analysis by correctly calculating the advisory range, the court is then free simply to disagree, based on the statutory sentencing factors, with the Guidelines' "rough approximation" of the appropriate sentence for any given case.  *Id.*

**ARGUMENT**

I. **The Sentencing Factors Under 18 U.S.C. § 3553(a) Counsel A Sentence Of No More Than Eighteen Months.**

   A. **Mr. Lee's History And Characteristics Weigh In Favor Of A Sentence of Eighteen Months**

Mr. Lee is the father of four young children, including a 2-year-old daughter, Ahjin.  In

addition to caring for his immediate family, he pays $1300 a month to support his other three children, who live with Mr. Lee's ex-wife. As the first-born son, he is also his parents' principal source of familial support. *See* PSR 133-141.

The bribery and mortgage fraud conduct that took place in this case took place between 2004 and 2009. *See* PSR ¶¶ 17-89. That is a lifetime ago in the life of Mr. Lee. The John Lee who participated in that conduct was a man who acted for reasons of "ego and greed." Letter from John Lee to the Honorable Emmet G. Sullivan, Ex. 1. That is not the same man who stands before the Court today. As Mr. Lee's letter to the Court attests:

> I do not really possess the words to adequately explain the magnitude of what I have done, why I did it, and the overwhelming remorse and self-loathing I feel about myself and the intense harm and pain I have inflicted upon innocent people who trusted me and loved me only to be deceived by me; my actions can only be described in the most despicable of terms: I committed multiple acts of financial crimes. All in the name of ego and greed.
>
> I was convicted of two counts, bribery of a public official and conspiracy to commit bank fraud. I plan to own up to my actions and make amends for my mistakes. While I can't go back in time and reverse what I did, you can rest assured that this will never happen again. This is not the type of person that I am, and I am ashamed of myself for even considering what I did, let alone doing it.
>
> I respectfully ask that you consider all of this when it comes to my sentencing. I have spent my whole life taking care of my parents who immigrated from South Korea having issues with culture and language. As being the first born of our family, it is my cultural duty to take full responsible to take care of my parents. Also, raising three sons from my first marriage and adorable daughter who was born in Korea from the second marriage. When I received a letter from the US Justice department to report back to US for cooperating, I had to leave my wife who was 8 months pregnant alone without any money. My wife and daughter are here with me now, we are living very happily but we have been living with worry that we would soon be apart again.
>
> I was not raised to take the easy way out, so am disgusted with myself at what I did. My only explanation is that the pressure of my daily responsibilities became too much, and instead of seeking help, I acted out. Above all else, I know that what I did is wrong, and it is not the person that I want to become.

Ex. 1 (letter to Court from John Lee). Similarly, Mr. Lee's wife, Unimi Lee, describes well the man

her husband is now and their shared circumstances today:

> My name is Unmi Lee, and in the past seven years that I have been in my husband's life, he has provided me nothing but love, faithfulness, support, and never-ending gratitude.
>
> He has been and will continue to be a model father to our two-year-old daughter, Ahjin and to his three sons from his previous marriage John Jr., Christopher and Daniel. John has always tried his hardest to keep our family together, no matter what the trials or tribulations may have been. In our past, there have been many obstacles, but his persistence and goal for a better life for all of us has kept us together.
>
> We were living in South Korea and he was called to court in the U.S. for this case in September 2012. I was in my 7th month of pregnancy. I was left alone without any family and had my daughter on my own. Although he couldn't bring us to the U.S. right away, he worked hard at a market and we were united when my daughter was six months old. Although I worked full-time at home I don't think I would have been able to survive on my own without John. He has been active in his children's life, and he's proven to be a loving, caring father, and is genuinely concerned for their well being, even if it means not seeing them for an extended period of time.
>
> Ahjin is still too young to know the consequences of John's actions, but I am sure that John is well aware of how his lapse in his judgment has affected the lives of his loved ones. I can confirm that he is a good man. While he committed an offense in this instance, I know from his past actions that this was a mistake. John truly regrets being in this predicament and understands the cost of his actions. I only ask that you consider his four children's relationship with their father when deciding on a sentencing time frame, and the importance he has always been in their lives. I have no doubt that he will continue to do right by them and for the sake of our family.

Ex. 2.

While some prison time is necessary in order to further the goal of general deterrence, the government is simply wrong that Mr. Lee must be specifically deterred to prevent further crime. Given where his life is now, Mr. Lee poses almost no risk of recidivism today.

  **B. Mr. Lee's Role in the Offense Conduct.**

As Mr. Lee's letter to the Court makes clear, Mr. Lee's conduct during the years of this scheme (2004-2009) was totally unacceptable. However, there are at least two mitigating factors with respect to Mr. Lee's role in the offense that are important to underscore. First, when Mr. Lee arrived on the scene, the bribery scheme involving In Seon Lim was already fully underway. Nick

Park, Alex Cho and others had already been approached by Mr. Lim and were already paying him tens of thousands of dollars for steering lucrative contracts to their company, Nova Datacom. *See, e.g.,* Statement of Facts, *United States v. Lim*, No. 14-cr-159-LMB ¶¶ 17-20 (E.D. Va. July 31, 2014) (Attached as Ex. 3). And second, In Seon Lim used his position as a government official to shake down a number of different contractors, including Nova Datacom and Saena Tech, which are companies Mr. Lee had nothing to do with. Given Mr. Lim's appetite for corruption, Mr. Lee's role in this scheme was hardly unique or special.

On the first issue, it is of note that this bribery scheme did not originate with John Lee, but rather preceded his involvement. In Seon Lim, like Kerry Khan but on a a more modest scale, was a corrupt government official who was out looking for bribes. Predictably in such a "pay to play" situation, he found willing parties among various different government contractors, the first of which, Nova Datacom, had nothing to do with John Lee. As noted in Mr. Lim's factual proffer, Nova Datacom paid Mr. Lim $50,000 in 2007 alone, prior to any involvement by John Lee in the scheme. *See Lim* Statement of Facts, ¶¶ 17-20 (Ex. 3) (noting that Mr. Lim accepted $50,000 from Nova Datacom). While Mr. Lee helped keep the payments flowing to Mr. Lim through various channels once the scheme was underway, this scheme was not his idea and would have begun absent Mr. Lee's involvement.

Second, even once Mr. Lee was involved, the companies he worked for were not the only ones paying Mr. Lim. Indeed, Saena Tech, a government contractor in Seoul, South Korea, was responsible for more payments to Mr. Lim than all of the companies Mr. Lee worked for combined. *See Lim* Statement of Facts, ¶¶ 39-41 (Ex. 3) (noting that Mr. Lim accepted $245,000 from Saena Tech between September 2009 and April 2010)). This fact not only underscores why Mr. Lee is far less responsible than Mr. Lim in a financial sense (Mr. Lee being involved with far less than the $490,000 in bribes Mr. Lim accepted), but the abhorrent effect a government official can have on

the industry he works with and the contractors in it when he puts himself out for sale.

### C. The New Fraud and Bribery Guidelines.

On April 30, 2015, the United States Sentencing Commission issued Amendments to the Sentencing Guidelines. *See* Ex. 3 (Amendments). The Amendments become effective on November 1, 2015, and so are not included in the PSR's computation of Mr. Lee's Guidelines range. Under the Amendments, Mr. Lee's total adjusted Guidelines range is two levels lower. Mr. Lee's post-departure range is therefore 24-30 months, as opposed to the 30-36 months the government relied in making its sentencing recommendation for Mr. Lee.

The "loss" from the bribery scheme involving Mr. Lee was less than $240,000, a figure derived from taking the $490,000 In Seon Lim (the only person who took bribes in this case) received and backing out $250,000 he received from a contractor unrelated to Mr. Lee. *See* Statement of Facts, *United States v. Lim*, No. 14-cr-159-LMB ¶ 14 (E.D. Va. July 31, 2014) (noting that Mr. Lim accepted "things of value" of approximately $490,000 through his involvement with the scheme). Notably, Mr. Lim also received $50,000 from Nova Datacom prior to Mr. Lee ever becoming involved in the bribery scheme. *See* Ex. 3 ¶¶ 19-20. In any event, because the amount of the bribes is less than $250,000 -- the new threshold under the amended § 2B1.1 (*see* Ex. 3 at 13-14) -- Mr. Lee's adjusted offense level for the bribery would be a 24 instead of a 26. Similarly, because the total aggregate loss was to lenders was $1,231,091, the new fraud guidelines would place Mr. Lee at a total adjusted offense level of 22, instead of the 24 he is at under the current Guidelines. *See id.*

Combining the two offense levels, Mr. Lee is at 24, instead of 26. After subtracting three levels for acceptance of responsibility, Mr. Lee is at a 23, for a Guidelines range of 46-57 months, instead of the 57-71 months under the current Guidelines. After the 6-level departure for Mr. Lee's extensive cooperation and substantial assistance, the low end of Mr. Lee's post-departure guidelines range is 24 months imprisonment, instead of the 30 months imprisonment the government has

recommended.

Thus, the amendments to the fraud and bribery Guidelines suggest a sentence significantly below the 30 months the government has recommended. At least one other judge on this Court had already relied on the amended version of § 2B1.1 to find a lower Guideline range at a fraud sentencing. *See United States v. Faamoni Utu*, 15-cr-019 (BAH). The defense respectfully requests that this Court do the same.

### D. A Sentence of 18 Months Will Better Avoid Unwarranted Sentencing Disparities.

When viewed in light of Mr. Lee's personal circumstances and relative culpability, the sentences imposed on other similarly situated defendants both nationally and in this scheme illustrate why a sentence above eighteen months would create an unwarranted sentencing disparity in this case. In 2013, more than 60% of bribery defendants received sentences below their guideline ranges, and nearly half of those departures were *not* government sponsored (33.6 percent of bribery defendants received government-sponsored downward departures). *See* U.S. Sent'g Comm'n, *2013 Sourcebook of Federal Sentencing Statistics*, tbl.27.

A sentence of 18 months would also be consistent with other sentences imposed in this case. Nick Park, who was one of the initial participants in this scheme while at Nova Datacom and was above Mr. Lee in the hierarchy at UEI, received a sentence of 18 months, despite being in Criminal History Category III. *See United States v. Park*, No. 12-cr-102 (EGS). Thomas Kwon, also above Mr. Lee in the hierarchy at Avenciatech and who received a leadership increase for his role in this scheme, and who was also guilty of far more serious mortgage fraud,[1] received an overall sentence of 37 months. *See United States v. Kwon*, No. 12-cr-181 (EGS)

And most notably (though admittedly not sentenced before this Court), In Seon Lim -- the

---

[1] Unlike Mr. Lee, Mr. Kwan was a mortgage broker and therefore an industry insider who occupied a position of trust.

7

corrupt government official, mortgage fraudster, and leader of a bribery scheme that has now largely destroyed numerous lives -- received a total sentence for all of his conduct of 48 months. *See United States v. In Seon Lim*, 14-cr-159 (E.D. Va.) (LMB).  That is just 18 months longer than the government is requesting for Mr. Lee, a mid-level participant on the company side who did not come to this scheme until it was already fully underway due to the greed of Mr. Lim and others.

To avoid both unwarranted national and case-specific sentencing disparities, the defense respectfully submits that this Court should sentence Mr. Lee to no more than eighteen months.

### E.An Eighteen Month Sentence Is Sufficient to Deter Mr. Lee and Other Potential Offenders.

General deterrence has already been achieved here in this case and the related case involving Kerry Kahn, and it will not be increased by imposing a longer sentence on Mr. Lee.  Empirical research corroborates the simple fact that convictions, standing alone, have the greatest deterrent effect.  The most effective deterrent in these related cases is the fact that numerous individuals and several companies have already been convicted in relation to the related Khan bribery scheme as well as In Seon Lim's.  Scientific research consistently demonstrates that while the certainty of being caught and punished has a deterrent effect, increasing the "severity of punishment[] do[es] not yield significant (if any) marginal deterrent effects."  Michael Tonry, *Purposes and Functions of Sentencing*, 34 Crime & Just. 1, 28 (2006) ("Three National Academy of Science panels . . . reached that conclusion, as has every major survey of the evidence."); *see also* Zvi D. Gabbay, *Exploring the Leeits of the Restorative Justice Paradigm: Restorative Justice and White Collar Crime*, 8 Cardozo J. Conflict Resol. 421, 447-48 (2007) ("[C]ertainty of punishment is empirically known to be a far better deterrent than its severity.").  In fact, a review of the scientific literature demonstrates that "correlations between sentence [length] and severity of crime rates . . . [are] not sufficient to achieve statistical significance."  Andrew von Hirsch, *et al.*, *Criminal Deterrence and Sentence Severity: An Analysis of Recent*

8

*Research*, at 2 (1999); *see also*, *id.*, at 1 ("the studies reviewed do not provide a basis for inferring that increasing the severity of sentences is capable of enhancing deterrent effects").

Research regarding white collar offenders—such as Mr. Lee—in particular found no difference between the deterrent effects of probation and those of imprisonment. *See* David Weisburd, *et al.*, *Specific Deterrence in a Sample of Offenders Convicted of White Collar Crimes*, 33 Criminology 587 (1995); *see also* Gabbay, *supra*, at 448-49 ("[T]here is no decisive evidence to support the conclusion that harsh sentences actually have a general and specific deterrent effect on potential white-collar offenders."). As the Sentencing Commission itself has concluded, "a short but definitive period of confinement for a larger proportion of these 'white collar' cases . . . achieve[s] deterrence." *See* United States Sentencing Commission, *Fifteen Years of Guidelines Sentencing*, at 56 (2004); *see also United States v. Adelson*, 441 F. Supp. 2d 506, 514 (S.D.N.Y. 2006) ("[t]here is considerable evidence that even relatively short sentences can have a strong deterrent effect on prospective 'white collar' offenders").

### F. Mr. Lee Poses Little to No Future Risk to Society.

To determine the sentence that is sufficient but not greater than necessary to protect the public from further crimes by Mr. Lee, this Court should consider the statistically low risk of recidivism presented by individuals with Mr. Lee's personal history and characteristics. *See, e.g.*, *United States v. Darway*, 255 F. App'x. 68, 73 (6th Cir. 2007) (upholding downward variance on basis of defendant's first-offender status); *United States v. Hamilton*, 323 F. App'x. 27, 31 (2nd Cir. 2009) (concluding that "the district court abused its discretion in not taking into account policy considerations with regard to age recidivism not included in the Guidelines"); *United States v. Holt*, 486 F.3d 997, 1004 (7th Cir. 2007) (affirming below-guideline sentence based on defendant's age).

As previously noted, Mr. Lee is 44 years old and a first offender. He has been gainfully employed throughout his adult life, is married with children, and has no history of drug or alcohol

abuse.

Like others "with zero criminal history points," Mr. Lee is much "less likely to recidivate than all other offenders." *United States v. Cabrera*, 567 F. Supp. 2d 271, 279 (D. Mass. 2008) (granting downward variance based on lack of criminal history). By way of example only, offenders with no criminal history points have a rate of recidivism that is *half* that of offenders with only one criminal history point. *See* Sent'g Comm'n, *Recidivism and the "First Offender,"* at 13-14 (May 2004) [hereinafter "*First Offender*"].

Moreover, the guidelines do not "account for the length of time a particular defendant[—such as Mr. Lee—]refrains from criminal conduct" before committing his first offense. *United States v. Ward*, 814 F. Supp. 23, 24 (E.D. Va. 1993) (granting downward departure based on defendant's age as first-time offender). For all male offenders in criminal history Category I, the recidivism rate is 15.2 percent; however, that figure decreases dramatically as one ages. Indeed, for those over age 50 at the time of sentencing, the rate in Category I is only 6.2 percent. *See* U.S. Sent'g Comm'n, *Measuring Recidivism: The Criminal History Computation of the Federal Sentencing Guidelines* (May 2004) [hereinafter "*Measuring Recidivism*"].

The Sentencing Commission has recognized the merit of revising the guidelines to take age and first offender status into account. *See First Offender*, at 1-2 (identifying a goal of "refin[ing] a workable 'first-offender' concept within the guideline criminal history structure"); *Measuring Recidivism*, at 16 (noting that "[o]ffender age is a pertinent characteristic" that would "improve [the] predictive power of the guidelines . . . if incorporated into the criminal history computation").

Mr. Lee is extremely unlikely to pose any future risk to society because he has a strong employment history, is married, and has no history of substance abuse. *See Measuring Recidivism*, Exs. 9 & 10 (May 2004) (noting measurable drops in recidivism associated with each of these individual characteristics: receipt of college degree, employment history, marital history, absence of drug

10

history, and age at sentencing). Also, according to "the best available evidence . . . prisons do not reduce recidivism more than noncustodial sanctions." Francis T. Cullen, *et al.*, *Prisons Do Not Reduce Recidivism: The High Cost of Ignoring Science*, 91 Prison J. 48S, 50S-51S (2011).

This Court should therefore reduce any sentence it deems necessary here to account for Mr. Lee's extremely low risk of recidivism. *See United States v. Urbina*, 2009 WL 565485, at *3 (E.D. Wis. Mar. 5, 2009) (considering low risk of recidivism indicated by defendant's lack of criminal record, positive work history, and strong family ties); *Simon v. United States*, 361 F. Supp. 2d 35, 48 (E.D.N.Y. 2005) (basing variance in part on defendant's age of 50 upon release because recidivism drops substantially with age); *United States v. Nellum*, 2005 WL 300073, at *3 (N.D. Ind. Feb. 3, 2005) (granting variance to 57-year-old defendant because recidivism drops with age).

* * *

Mr. Lee recognizes that his crimes are very serious. He has accepted full responsibility for his actions, and he is ready to do everything he can to answer for his crimes and then to move forward with putting his life back together and becoming a positive contributing member of society. Mr. Lee has already taken strides to rehabilitate himself by cooperating fully in the government's ongoing investigation of related crimes, by attempting to pay back losses from the mortgage fraud scheme, and by cutting off all ties to his former life.

Mr. Lee has no criminal history, and—given everything he has been through here—poses almost no risk of recidivism. He is now a dedicated family man, who bears the burden and responsibility of supporting his immediate and extended family, including his parents. He should be given sentence that will allow him to continue that important work in a reasonable period of time.

**CONCLUSION**

For the foregoing reasons, Mr. Lee respectfully submits that a sentence of no more than eighteen months is sufficient to accomplish the purposes of sentencing. Mr. Lee also respectfully requests that no fine be imposed, given the substantial amount of restitution involved here.

Respectfully submitted,

A. J. KRAMER
FEDERAL PUBLIC DEFENDER

_____/s/_____
Jonathan S. Jeffress
Assistant Federal Public Defender
625 Indiana Avenue, N.W.
Suite 550
Washington, D.C. 20004
(202) 208-7500